Betty Jo Van NEVILLE, Administratrix of the Estate of Charles W. Van, Deceased, Plaintiff,

v.

ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant.

Civ. A. No. J75–61(R).

United States District Court,
S. D. Mississippi,
Jackson Division.

Dec. 23, 1976.

---

5. *Staub v. Johnson, supra*, at 302, n. 10.

**1350**

Keith Starrett, Magnolia, Miss., for plaintiff.

John E. Hughes, III, Jackson, Miss., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

The defendant has renewed its motion to dismiss for lack of jurisdiction of the subject matter and to enjoin plaintiff from proceeding in any court. In its first motion defendant urged that the declaration showed on its face that the controversy described therein is within the exclusive jurisdiction of the National Railroad Adjustment Board by virtue of the National Railway Labor Act, 45 U.S.C. # 153, et seq. Primarily the Court declined to grant the motion in the absence of evidence that the deceased was a member of a union which had a bargaining agreement with the defendant, in the absence of a copy of the insurance policy involved, and in the absence of defendant's answer. The Court, however, did reserve to defendant the right to renew its motion.

The renewed motion is based upon the complaint, defendant's answer, defendant's Request for Admission of Facts and plaintiff's responses thereto, and the affidavit of W. J. Cassin. In defendant's request for admissions of fact, it attached a copy of Life Insurance Company of North America Policy ABL 61-64-91, which plaintiff admits is the policy in question. It also appears that Charles W. Van, deceased, was at the time of the accident, from which he died, a member of the Brotherhood of Railway Trainmen, which negotiated the letter agreements with defendant agreeing to provide certain insurance benefits for employees subject to a contract between defendant and the Brotherhood, which union has now been succeeded by United Transportation Union-Trainmen.

The renewed motion has been orally argued to the Court and briefs have been submitted.

In its earlier opinion the Court drew a distinction between an issue questioning the validity of the bargaining agreement, in which event this Court would have jurisdiction, and an issue involving an interpretation of the bargaining agreement, over which the National Railway Adjustment Board has exclusive jurisdiction. The defendant claims the issue is one over which NRAB has exclusive jurisdiction. Plaintiff contends that the action is a simple breach of contract suit before this Court as a result of diversity jurisdiction. As noted in its earlier opinion, distinguishing between the two can sometimes be difficult.

One thing is clear. The language in the INA policy, effective at the time of Van's accident, is not in dispute, "Schedule II— description of Hazards", clearly provides that coverage shall not apply while an Insured (Van) is normally commuting to and/or from his residence or place of business. Plaintiff admits that Van was pro-

ceeding in a vehicle, not owned by the defendant, from his home to defendant's railroad yard in McComb City, Mississippi, in response to a call to report to work. In transit he was in an accident resulting in his death. Obviously his death did not result from a hazard covered by the policy, but from a hazard that was excluded. However, that is not the issue presented here. By letter agreement of October 2, 1968, the defendant agreed to amend a June 28, 1966 letter agreement providing for certain company-financed insurance by deleting certain language and substituting therefor other language as follows: "when riding in, boarding, or alighting from off-track vehicles authorized by the carrier". An additional paragraph to the agreement was the following:

"This agreement is intended to provide a guarantee recovery by an employee under the circumstances described and, that receipt of payment thereunder shall not bar an employee from pursuing any action under the provisions of the Federal Employers Liability Act or any other law; provided, however, that any amount or settlement received by the employee under this agreement may be applied as an offset by the railroad against any recovery so obtained."

This letter agreement was accepted by M. S. Stuckey, General Chairman, Brotherhood of Railroad Trainmen on October 3, 1968.

Also in its requests for admission addressed to plaintiff, defendant asked her to admit that a copy of a letter from M. S. Stuckey, General Chairman of the United Transportation Union, to W. J. Cassin, Director of Labor Relations for defendant, was a true and correct copy. This letter, dated January 14, 1974, recites that the letter of agreement of June 28, 1966, amended by letter of agreement of October 2, 1968, provides that the employees will be covered by company-financed insurance "when required to ride in or on any vehicle operated over a public thoroughfare". Stuckey then stated it was his understanding that this coverage was provided in INA Policy No. ABL 61–64–91. He requested a copy of the policy. In her responses to the request for admission, plaintiff refused to admit the request.

In the affidavit of W. J. Cassin, assistant vice-president marketing, of the defendant railroad, dated May 20, 1976, offered in support of defendant's motion, Cassin said that as director of defendant's labor relations he was thoroughly familiar with the negotiations between the Brotherhood of Railroad Trainmen and defendant which culminated in the letter agreements of June 28, 1966 and October 2, 1968 and with the actions of the defendant in compliance with same. Affiant further stated that INA Policy No. ABL 61–64–91 was purchased by defendant pursuant to the letter agreements and that it was in effect on March 30, 1973. Affiant also attached a copy of Stuckey's letter of January 14, 1974, and stated that a copy of said policy was furnished to the Brotherhood of Railroad Trainmen and its successor in interest as being in full and complete compliance with the said letter agreements, and, lastly, that the union raised no objection thereto and accepted same without comment.

Plaintiff has attached to her brief, a counter-affidavit by Stuckey, which is not filed of record, but should be. Stuckey said that the letter agreements were the results of collective bargaining between the Brotherhood of Railroad Trainmen and defendant and that said letter agreements constituted a binding contract between the two and were accepted by the union on behalf of its members. According to affiant, the defendant was thereby obligated to furnish death and dismemberment insurance for union members "when riding in, boarding, or alighting from off-track vehicles or when riding in or on off-track vehicles authorized by carrier", the coverage called for in the letter agreements. According to affiant, Van was fully within the coverage that was supposed to have been procured by defendant, and would have been subject to discipline and dismissal if he had not responded to the call to report for work; said coverage has not been provided for in INA Policy No. ABL 61–64–91; and lastly, Stuckey de-

nied that the Brotherhood had accepted the aforesaid policy as in compliance with the letter agreements and does not consider the defendant bound by the policy, but by the letter agreement which called for coverage that applied to the circumstances of the death of Charles W. Van.

With the exception of whatever Stuckey's letter of January 14, 1974 meant, the Court does not know when the union decided that the INA policy did not comply with the letter agreements, as it now appears to claim.

The Railway Labor Act (45 U.S.C. # 153, et seq.) requires that disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions, be handled in their usual manner, and, if not adjusted, be referred to the appropriate division of NRAB in the manner prescribed by the Act. The reason for this legislation mandated by the Congress is that such disputes should be processed and disposed of by an arbitration board expert in railroad jargon. Although this Court does not believe that any special railroad expertise is needed to determine whether or not the defendant here complied with its letter agreements, or whether the union timely made its objections, the Court does find that the dispute involves not an interpretation of the policy, but an interpretation of the letter agreements, and is a matter involving fringe benefits afforded by the agreements, and, as such, is a dispute within the jurisdiction of NRAB. It may be that the appropriate division of NRAB has had before it the same kind of dispute. It goes without saying, whether it has or not, that any decision by the appropriate division would result in a ruling having union application as to other employees or nearest of kin, or representatives of the estates of deceased employees.

The Court accordingly grants the defendant's motion to dismiss for lack of subject matter jurisdiction. As it appears from the record before the Court that neither the deceased's administratrix nor nearest of kin

have instituted proceedings for the processing of this grievance as provided for in 45 U.S.C. # 153, et seq., the Court declines to enjoin the plaintiff from proceeding in any court. In the event she does so, it is sufficient that defendant may arm itself with this opinion and the order to be rendered thereon.

An appropriate order may be submitted with court costs taxed to the plaintiff.